STEWART, J.
 

 | j Defendant-Appellant, Loren F. Chandler, et al., (“Chandlers”), is appealing a written judgment rendered in favor of Plaintiff-Appellee, Arnold Victor Worley, et al., (“Worleys”), awarding them damages totaling $71,705.48, in connection with a contract to buy and sell immovable property. Finding that the Chandlers’ claims bear no merit, we affirm the trial court’s judgment.
 

 FACTS
 

 The Worleys filed suit against the Chandlers, seeking damages for the Chandlers’ failure to purchase the Worleys’ home at 209 Canyon Road, West Monroe, Louisiana. The negotiations related to the sale of this home were reduced to writing in a Residential Agreement to Purchase and Sell.
 

 On February 7, 2006, the Chandlers made the first offer on the home in the amount of $490,000.00 and deposited $5,000.00 in connection with the offer. The Residential Agreement to Purchase and Sell provided that the deposit would not be considered as earnest money and the parties opted for specific performance:
 

 This deposit shall not be considered as earnest money and this contract shall be considered a Specific Performance Contract.
 

 On February 7, 2006, the Worleys made a counter offer to sell for $530,000.00 and added a handwritten provision that occupancy would be granted seven days after the closing, or sooner if possible.
 

 On February 10, 2006, the Chandlers made a counter offer for $528,000.00 and included the following handwritten language related to the deposit and obligations in the event the sale failed:
 

 
 *41
 
 | .¿The deposit shall be non-refundable after all inspections by purchaser and approval for a loan, appraisal completed. If the sale falls through after March 6, 2006, the deposit shall be given to sellers.
 

 The Chandlers’ realtor, Mr. Dwaine Sutton of Coldwell Banker, testified that he wrote this language contained in the counter offer.
 

 In April of 2006, Mr. Chandler terminated his recently acquired employment as the Chief Financial Officer at the Glen-wood Regional Medical Center. He then notified the Worleys that he would not be purchasing the home. The Worleys subsequently filed this suit seeking specific performance. The Chandlers filed a counterclaim seeking the return of their deposit.
 

 On July 3, 2008, the trial court rendered a judgment in favor of the Worleys, awarding them $71,705.48 in damages. The trial court determined that the handwritten language did not “do away with” what is written before it, and that the $5,000.00 at issue was not earnest money. The Chandlers are now appealing this judgment.
 

 LAW AND DISCUSSION
 

 Assignments of Eiror One and Two: Validity and Modification of the Contract
 

 The Chandlers assert three assignments of error in their appeal. In their first assignment of error, the Chandlers assert that the trial court erred in finding that the parties had a meeting of the minds and entered into a binding contract. In the second assignment of error, the Chandlers allege that the trial court erred in finding that the handwritten language in the | ¿buy/sell agreement did not modify the printed provisions relating to the deposit and obligations between the parties because the sale was not consummated.
 

 Because the intent of the Chandlers was completely different from that of the Wor-leys, the Chandlers argue that there was no “meeting of the minds” as it relates to the handwritten language in the Residential Agreement to Purchase and Sell. Therefore, the Chandlers assert that the parties failed to enter into an enforceable contract. Since assignments of error one and two are interrelated, we will discuss these issues together.
 

 On appeal, the reviewing court may not set aside a trial court’s findings in the absence of manifest error or unless they are clearly wrong. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Even though an appellate court may feel its own evaluations and inference are more reasonable than those made by the trial court, reasonable evaluations of credibility and reasonable inferences of fact are not disturbed on appeal where conflicting testimony exists. To reverse a trial court’s factual determinations, the appellate court must find that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. When findings are based on determinations regarding the credibility of a witness, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings.
 
 Hanger One MLU, Inc. v. Unopened Succession of James C.
 
 Rogers,
 
 et al.,
 
 43,120 (La.App. 2 Cir. 4/16/08), 981 So.2d 175;
 
 Green v. Nunley,
 
 42,343 (La.App. 2 Cir. 8/15/07), 963 So.2d 486.
 

 A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art.1906. A contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art 1927. The four elements of a valid
 
 *42
 
 contract are: (1) the parties must possess the capacity to contract; (2) the parties’ mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose.
 
 Provenza v. Central & Southwest Services, Inc.,
 
 34,162 (La.App. 2 Cir. 12/15/00), 775 So.2d 84. The court must find that there was a meeting of the minds of the parties to constitute consent.
 
 Hanger One MLU, Inc., supra.
 
 Consent may be vitiated by error, fraud, or duress. La. C.C. art.1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art 1949. The existence or nonexistence of a contract is a question of fact not to be disturbed unless clearly wrong.
 
 Chapman v. Ebeling,
 
 41,710 (La.App. 2 Cir. 12/13/06), 945 So.2d 222;
 
 Crowe v. Homeplus Manufactured Housing,
 
 38,382 (La.App. 2 Cir. 6/21/04), 877 So.2d 156. The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical manner. La. C.C. art.2047.
 

 |,A sum given by the buyer to the seller in connection with a contract to sell is regarded to be a deposit on account of the price, unless the parties have expressly provided otherwise. La. C.C. art. 2624. Under La. C.C. art 2624, when the parties’ intention is that a sum of money be given as earnest, they must clearly express that intention.
 
 Edco Properties v. Landry,
 
 371 So.2d 1367 (La.App. 3d Cir.1979).
 

 Both Mr. Sutton, the Worleys’ realtor, and Mrs. Inabnett, the Chandlers’ realtor, testified that the handwritten language in the agreement prevails over the typed language. Additionally, the Residential Agreement to Purchase and Sell states:
 

 If any of the pre-printed portions of this agreement vary or are in conflict with any handwritten, typed (not pre-print-ed), or other conditions of the sale, the handwritten, typed (not pre-printed), or other conditions of the sale provisions will control.
 

 Mr. Worley and Mr. Sutton testified that the Worleys accepted the counter offer containing the handwritten language with the understanding that if the sale fell through the Chandlers would forfeit their deposit and the Worleys would retain the right to sue for specific performance. To support the assertion that they had a right to sue for specific performance, the Wor-leys pointed out the portion of the Residential Agreement to Purchase and Sell that states:
 

 In the event of default by either party, the non-defaulting party shall have all rights to demand specific performance or damages, at their option.
 

 | fiSutton also testified that if the deposit was meant to be regarded as earnest money, then he would have addressed the money as earnest money, and not as a deposit.
 

 Alternatively, Mr. Chandler and Mrs. Inabnett testified that the handwritten language altered the agreement to allow the Chandlers to forgo purchasing the property by forfeiting their deposit. The Chandlers argue that their intent in agreeing to the handwritten language was if the sale failed for any reason they would lose their deposit and nothing more. Additionally, Mr. Chandler testified that after the handwritten language was added, it became an earnest money contract.
 

 The Residential Agreement to Purchase and Sell was a standard buy/sell agreement utilized by the Northeast Louisiana Realtors Association. The trial court found it to be clear and unambiguous. After reviewing the record, we must agree
 
 *43
 
 with the trial court that there was a “meeting of the minds” when the Chandlers entered into this binding contract to buy the property in question. Therefore, the first assignment of error is without merit.
 

 As stated above, jurisprudence has established that when the parties’ intention is that a sum of money be given as earnest, they must clearly express that intention. Unfortunately in the instant case, there is no clear indication that the $5,000.00 was to be given as earnest money. The additional handwritten language, which would prevail over the preprinted portions of the Residential Agreement to Purchase and Sell, failed to indicate that the $5,000.00 was to be given as earnest money. Rather, the 17Residential Agreement to Purchase and Sell clearly states that the deposit shall not be considered as earnest money and this contract shall be considered a specific performance contract.
 

 Based on the facts and evidence presented, we find that the trial court did not err in determining that the Worleys are entitled to enforce the specific remedies provided in the Purchase Agreement. Doing so in no way conflicts with the requirement that the Chandlers also lose their deposit. The second assignment of error is also without merit.
 

 Assignment of Error Number Three: Assessment of Damages
 

 In their third and final assignment of error, the Chandlers argue that the trial court erred in its assessment of damages. The Worleys introduced a summary of damages at trial:
 

 A. Difference in the sale price agreed to by Defendant ($528,000) and the actual sale price obtained by Plaintiffs $25,000
 

 B. Real Estate Broker Fees: HELP U SELL $ 3,950.00
 

 JOHN REA REALTY $ 9,504.00
 

 C. Electricity for the Residence $ 1,804.06
 

 D. Natural gas usage for the Residence $ 282.00
 

 E. Water usage for the Residence $ 360.40
 

 F. Summer lawn and garden care $ 1,615.00
 

 G. Outdoor pool maintenance for Residence $ 200.00
 

 H. Sanitation Inspection performed for subsequent purchaser of Residence $ 314.00
 

 I. Ouachita Parish health inspection $ 100.00
 

 J. Purchase of home warranty for subsequent purchaser of Residence $ 350.00
 

 IsK. Early rental of second home (May-Oct)
 

 (Plus Deposit of $1,500) $12,600.00
 

 L. Early rental of storage room $ 1,738.52
 

 M. Attorney Fees — Mr. Steve North $ 1,387.50
 

 —Mr. Paul Hurd (approximate) $12,500.00
 

 The Chandlers assert that damages for the items listed above in bold print are not supported by the evidence and are clearly wrong. In regard to the broker fees of John Rea Realty, the Chandlers argue that there was no testimony that the Worleys have paid or will be required to pay the broker fees of the Chandlers’ realtor, John Rea Realty. The Chandlers also assert that there is not any evidence that the Worleys paid or would be required to pay the broker fees of their own broker, Help-U-Sell. The Chandlers also argue that there is no testimony that the Worleys lost the deposit on the rental of their second home. Finally, the Chandlers argue that there is no testimony supporting the Wor-leys’ reasoning for the early rental of a storage room when they rented another home.
 

 The Worleys assert that the Chandlers are now erroneously contesting the expenses incurred by the Worleys for the first time and without support under law.
 

 In the absence of an objection, the complaining party must be deemed to have waived his right to complain of the alleged impropriety on appeal. The reason therefor is that in the absence of an objection, the trial court is afforded no opportunity
 
 *44
 
 to prevent or correct the alleged error. La. C.C.P. art. 1635;
 
 American Manufacturers Mutual Insurance Company v. General Motors,
 
 582 So.2d 934 (La.App. 2 Cir.1991).
 

 |nThe Residential Agreement to Purchase and Sell contained the following language:
 

 The defaulting party shall also be liable for the brokerage fees and all other costs and fees including reasonable attorney’s fees incurred as a result of the breach of this agreement.
 

 In addition to the language contained within the Residential Agreement to Purchase and Sell, the Worleys presented various documents, check payments, and testimony to support their assertion of damages. More specifically, they introduced the $1,500.00 check to prove payment to the landlord for the rental of their second home. The Worleys also introduced personal checks in the amount of $1,738.52 for the early rental of a storage room. All of this evidence was admitted without objection. Based on the evidence presented, we agree with the trial court that the Worleys did confirm the damages they incurred and are entitled to damages amounting to $71,705.48. This assignment of error bears no merit.
 

 CONCLUSION
 

 After a thorough review of the record, we cannot say that the findings of the trial court made in favor of the Worleys were manifestly erroneous. Accordingly, we affirm the trial court’s judgment. Costs of the appeal are assessed to the Chandlers.
 

 AFFIRMED.